UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JARED HEATH NORWOOD                          CIVIL ACTION

VERSUS                                       NO. 17-5921

NANCY A. BERRYHILL, ACTING                   SECTION "G" (2)
COMMISSIONER OF SOCIAL SECURITY

## FINDINGS AND RECOMMENDATION

Plaintiff, Jared Heath Norwood, seeks judicial review pursuant to Section 405(g) of the

Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration ("Commissioner"), denying plaintiff's claim for disability insurance

benefits ("DIB") under Title II of the Act and for supplemental security income benefits

("SSI") under Title XVI of the Act.  42 U.S.C. § 1382c.  This matter was referred to a United

States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

I.      PROCEDURAL HISTORY

Norwood filed applications for DIB and SSI on May 23, 2014, alleging disability since

November 20, 2013, due to severe back problems.  (Tr. 15, 76).  After his claim was denied

at the agency level, he requested a hearing before an Administrative Law Judge ("ALJ"),

which was held on February 2, 2016 (Tr. 28-52).  The ALJ issued a decision denying the

application on May 3, 2016 (Tr. 12-14).  On May 17, 2016, Norwood requested review of the

ALJ's decision.  (Tr. 140).  After review, the Appeals Council upheld the ALJ's decision on

May 11, 2017, and the ALJ's decision became the Commissioner's final decision for purposes

of this court's review.  (Tr. 1-4).

Plaintiff filed a timely memorandum in support of his appeal, and defendant filed a timely reply memorandum.  Record Doc. Nos. 16, 19.

II.    STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the Commissioner made the following errors:

A.    Substantial evidence did not support the ALJ's residual functional capacity finding.

B.    The ALJ did not follow proper legal standards in determining how much weight to accord the opinions, diagnoses and medical evidence of plaintiff's treating physician as compared to the opinions of the reviewing physician.

III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

1.    Norwood meets the insured status requirements of the Social Security Act through December 31, 2017.

2.    Plaintiff has not engaged in substantial gainful activity since November 20, 2013, the alleged onset date.

3.    He has severe impairments consisting of obesity and degenerative disc disease of the cervical and lumbar spines.

4.    Norwood does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.    Plaintiff has the residual functional capacity to perform the full range of sedentary work.

6.    Norwood cannot perform his past relevant work as a shipfitter or welder.

7.    Considering plaintiff's age, education, work experience and residual functional capacity, jobs exist in significant numbers that he can perform, including polisher and order clerk.

8.      His subjective allegations were not found to be fully consistent with the medical evidence of record.[1]

9.      Norwood has not been under a disability from November 20, 2013, through April 28, 2016, the date of the ALJ's decision.

(Tr. 17-23).

IV.    ANALYSIS

A.      Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing

---

[1]

Recently, in March 2016, Social Security Ruling 16-3p superseded Social Security Ruling 96-7p.  SSR 16-3P. (S.S.A. Mar. 16, 2016.)  SSR 16-3p eliminated the use of the term "credibility" in evaluating an individual's subjective symptom evaluation.  Id.  Now, in determining whether an individual is disabled, the ALJ is to consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record.  Id.  A symptom is the individual's own description or statement of his or her physical or mental impairment(s).  See 20 C.F.R. §§ 404.1528(a) and 416.928(a).

Under the regulations, an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability.  SSR 16-3P.  However, if an individual alleges impairment-related symptoms, the ALJ must evaluate those symptoms using a two-step process set forth in the regulations.  See 20 C.F.R. §§ 404.1529 and 416.929.

Stogner v. Comm'r of Soc. Sec. Admin., No. 9:16-CV-00063, 2018 WL 1242049, at *6-7 (E.D. Tex. Mar. 8, 2018).  SSR 16-3P applies to the ALJ's decision in the instant case, which was rendered after SSR 16-3P became effective on March 16, 2016.  Davis v. Berryhill, No. 4:16-CV-0429-O-BL, 2017 WL 3701689, at *11 n.13 (N.D. Tex. Aug. 10, 2017), report & recommendation adopted, 2017 WL 3674856 (N.D. Tex. Aug. 25, 2017).  Although the Commissioner's rulings "are not binding on this court, we have consulted them 'when the statute at issue provides little guidance.'"  Bryant v. Astrue, 272 F. App'x 352, 356 (5th Cir. 2008) (quoting Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001)); accord Ramirez v. Colvin, 606 F. App'x 775, 778 (5th Cir. 2015).

Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363-64; Perez, 415 F.3d at 461. This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. Halterman ex rel. Halterman v. Colvin, 544 F. App'x 358, 360 (5th Cir. 2013) (citing Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364. The Commissioner, rather than the courts, must resolve conflicts in the evidence. McCaskill v. Dep't of Health & Human Servs., 640 F. App'x 331, 332-33 (5th Cir. 2016) (citing Perez, 415 F.3d at 461); Luckey v. Astrue, 458 F. App'x 322, 324 (5th Cir. 2011) (citing Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)); Newton, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Ark. v. Okla., 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Joubert v. Astrue, 287 F. App'x 380, 382 (5th Cir. 2008) (citing Perez, 415 F.3d at 461). Any findings of fact by the Commissioner that are supported by substantial evidence

are conclusive. Ray v. Barnhart, 163 F. App'x 308, 311 (5th Cir. 2006) (citing Perales, 402

U.S. at 390); Perez, 415 F.3d at 461.

To be considered disabled and eligible for DIB and SSI[2], plaintiff must show that he

is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."

42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide

procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to

404.1599 & appendices, §§ 416.901 to 416.998 (2016). The regulations include a five-step

evaluation process for determining whether an impairment prevents a person from engaging

in any substantial gainful activity.[3] Id. §§ 404.1520, 416.920; Alexander v. Astrue, 412 F.

---

[2] The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988); Hector v. Barnhart, 337 F. Supp. 2d 905, 910 (S.D. Tex. 2004) (citing 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a)).

[3] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the

App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007));

Perez, 415 F.3d at 461. The five-step inquiry terminates if the Commissioner finds at any step

that the claimant is or is not disabled.  Id.

     The claimant has the burden of proof under the first four parts of the inquiry.  If he

successfully carries this burden, the burden shifts to the Commissioner to show that other

substantial gainful employment is available in the national economy that the claimant is

capable of performing.  When the Commissioner shows that the claimant is capable of

engaging in alternative employment, the burden of proof shifts back to the claimant to rebut

this finding.  Alexander, 412 F. App'x 720-21; Perez, 415 F.3d at 461.

     The court weighs four elements of proof when determining whether there is substantial

evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and

examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4)

the claimant's age, education, and work history.'"  Chrisner v. Astrue, 249 F. App'x 354, 356

(5th Cir. 2007) (quoting Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991)); accord Perez,

415 F.3d at 463.

---

physical and mental demands of a significant number of jobs in the national economy.  If the claimant
cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To
assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional
and vocational patterns. When the findings made with respect to a claimant's vocational factors and
residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. §
404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

B.    <u>Factual Background</u>

Norwood testified at the hearing that he was 43 years old, has a twelfth grade education and worked as a fitter and welder at shipyards for 24 years. (Tr. 31, 34, 40). He said that he has not worked since he was in a car accident on November 20, 2013. (Tr. 33). Plaintiff said that he lives with his fiancée and her 22-year-old son.[4]  (Tr. 32) He testified that his fiancée is disabled and receives workers' compensation, and that her son does not work. <u>Id.</u> Plaintiff stated that he no longer has a driver's license and that his fiancée's son drives him. (Tr. 33). He testified that no one will hire him because he takes painkillers, and he does not believe that he could work even if hired because he is always in pain. <u>Id.</u>

When asked where he has pain, plaintiff responded, "Lower back and it shoots down to my leg, right arm." (Tr. 34). Norwood stated that he does not do any exercises or physical therapy for his back or arm, but that he does walk when he can, and he will wake up and walk around when he gets muscle spasms, cramps or when his leg stiffens. <u>Id.</u> Later in the hearing, plaintiff also stated that his legs and neck hurt. (Tr. 39). He testified that he can walk for an hour to an hour and a half and can lift up to 60 pounds comfortably. (Tr. 34). As a shipfitter and welder, Norwood stated, he would lift about 75 pounds every other day in addition to his cutting torch and all of his welding tools. <u>Id.</u> Plaintiff testified that because he cannot read very well, a foreman would read blueprints for him. (Tr. 35).

---

[4] Norwood referred to his fiancée as both his fiancée and his wife interchangeably throughout his testimony, but corrected himself after calling her his wife. (Tr. 32). I will refer to her as Norwood's fiancée. Norwood also explained that he lives with "[a] son, that I call a son," who is actually his fiancée's son. <u>Id.</u> The court will refer to him as Norwood's fiancée's son.

Norwood stated that he does not smoke, but that he takes prescription narcotic pain medicine to help him sleep, as prescribed by his primary care doctor, Jay Vega, M.D.  Id.  He said that side effects from the painkillers include sleepiness and constipation. (Tr. 38).  Plaintiff testified that, aside from pain, he also has depression that prevents him from working and paying bills.  (Tr. 36).  When asked to describe his typical day, plaintiff responded, "If I could get up and move, I try to help [my fiancée]; clean the house if I can; feed the dogs; whatever.  My [fiancée's] son does all the other stuff, all my heavy lifting and everything."  Id.  He added that his fiancée's son also does yard work and unloads groceries.  Id.  Plaintiff stated that he occupies his time by playing with his dogs, walking outside and spending time with his fiancée.  Id.  He testified, however, that the majority of his and his fiancée's time is spent lying in bed because they "both hurt."  (Tr. 37).  Norwood said that he can only sit for about an hour or two before he needs to stand or walk around.  Id.  At this point in the hearing, he asked to stand and lean on his chair.  Id.

When asked what he would like to do in the future, plaintiff said, "I would love to be able to move around better than what I do.  But I know that ain't ever going to happen.  They want me to get surgery, but I can't afford it. . . . they told me it was $10,000 a disc and I got three."  (Tr. 38).  Norwood testified that the "back specialist" did not recommend that he use a back brace, but told him that he would be uncomfortable and on pain killers for the rest of his life.  Id.  He added that heating pads provide only temporary relief.  (Tr. 39).  Plaintiff stated that he would like to hunt and fish, but that the cold weather and getting up early in the

morning are often impossible because he cannot get out of bed some days.  Id.  Plaintiff said that he does not tie his shoes, but instead leaves them tied and slips them on.  Id.

Upon questioning by his attorney, Norwood stated that he graduated from high school. (Tr. 40).  He testified that he can read a newspaper or magazine, but he has difficulty making sense of what the words mean all together.  Id.

Plaintiff stated that he was a shipfitter for 24 years, and that he worked with North American, Masse Contractors and Bollinger's.  Id.  He testified that, as a shipfitter and welder, he "[c]ut holes, steel, whatever they tell me to do," which frequently involved climbing, crawling and lifting large pieces of steel.  (Tr. 40-41).  Norwood stated that he would handle 300 to 400 feet of "welding lead," one foot of welding lead equaling one pound, on a daily basis.  (Tr. 41).  He said he would occasionally handle a much larger amount of weight when dealing with "a shaft," but he explained that such shafts were "put in" by a crane.  Id. Norwood stated that he could not do those things today.  Id.

Plaintiff testified that he has difficulty walking because he "catch[es] a limp" in his left leg, and his right knee "stops working."  (Tr. 42).  When his attorney outlined plaintiff's MRI report – "chronic pain due to L4/L5 disc bulges with spondylolisthesis[5] and mild depressive

---

[5] Spondylolisthesis is "forward displacement of a lumbar vertebra on the one below it and especially of the fifth lumbar vertebra on the sacrum producing pain by compression of nerve roots."  MedlinePlus Medical Dictionary, http://www.merriam-webster.com/medlineplus/Spondylolisthesis (last visited May 11, 2018).  Plaintiff was diagnosed with mild cervical spondylosis and lumbar spondylolisthesis at L5-S1 after x-rays were obtained by Dr. Brett Casey (Houma Orthopedic Clinic) on February 7, 2013.  (Tr. 207-208).  An MRI of Norwood's lumbar spine on February 18, 2013 revealed chronic spondylolysis at L5 and not spondylolisthesis of the L4 and L5 vertebra.  (Tr. 224, 228).  Spondylolysis is the "disintegration or dissolution of a vertebra."  MedlinePlus Medical Dictionary, http://www.merriam-webster.com/medlineplus/Spondylolysis (visited May 11, 2018).  "Cervical spondylosis is a disorder in which there is wear on the cartilage (disks) and bones of the neck (cervical vertebrae).  It is a common cause of

- 9 -

C-spine . . . spondylolisthesis at L5 with endplate spurring, with moderate bilateral neural

foraminal stenosis[6]" – plaintiff stated that his doctors had not explained the context of those

findings.  Id.  Norwood said he did not go forward with the epidural steroid injection and disc

operation recommended by his doctors because he had "[n]o money."  Id.  He stated that his

daily pain level is a seven (7) or eight (8) out of 10 on a zero (0) to 10 scale, with zero

meaning no pain and 10 meaning excruciating pain.  (Tr. 43).  Plaintiff testified that his pain

gets slightly better if he takes a pill, "but not much."  Id.  When asked whether he understands

the significance of the radicular pain he experiences in both of his legs, Norwood responded

"[i]t keeps me from sleeping."  Id.

　　　Plaintiff stated that he was prescribed Valium[7] to address his muscle spasms, trouble

sleeping and depression and had been taking it for about one month at the time of the hearing.

(Tr. 44).  Norwood said that the medication makes him drowsy.  Id.  He testified that he is

depressed because he cannot do anything.  Id.  He said, "I can't get up and work like I used

to.  I been doing that for 24 years and then all of a sudden, I can't do nothing."  Id.  Norwood

stated  that he used to enjoy hunting, fishing and riding motorcycles, but cannot do those

chronic neck pain."  Cervical spondylosis, Medline Plus, https://medlineplus.gov/ency/article/000436.htm
(last visited May 11, 2018).

　　[6] Neural foraminal compromise/spinal stenosis is a narrowing of the nerve passageways in the spine,
which could lead to compression or pinching of the nerves over time. See Spinal Stenosis, Medline Plus,
https://medlineplus.gov/ency/article/000441.htm (last visited May 11, 2018) ("Spinal stenosis is narrowing
of the spinal column that causes pressure on the spinal cord, or narrowing of the openings (called neural
foramina) where spinal nerves leave the spinal column.").

　　[7] Valium is a prescription drug that is "used for anxiety, acute alcohol withdrawal, skeletal
muscle spasms, and seizure disorders." PDR+ (PDR, LLC 2018),
http://www.pdr.net/drug-summary/Valium-diazepam-2100.1196 (last visited May 10, 2018).

things anymore.  Id.  He stated that he cannot "hold the bike up," but that a friend was trying to find him a "trike" so he could can start riding again.  Id.  When asked whether he could tolerate the vibrations caused by the bike, plaintiff said, "[n]ot really, but I can try."  Id.  He testified that he cannot sit in a boat because of the vibrations caused by waves, and he cannot sit in a deer stand or duck blind because it "kills" his back.  (Tr. 45).

Plaintiff stated that he normally wakes up between 7:00 a.m. and 9:00 a.m., takes a painkiller and slowly gets out of bed.  Id.  He said that he can "tell you when it's getting cold before it happens" because his back starts "killing" him.  Id.  Norwood testified that he does not need help in the bathroom because he can grab onto the wall and pull himself up, but he does have trouble getting up from a sitting position or when he is lying down.  (Tr. 46). Plaintiff said that his fiancée will occasionally put on his socks for him when he cannot pick up his legs.  Id.  Norwood testified that his fiancee's son cooks, and that he goes shopping with his fiancée and occasionally uses a "riding cart" while shopping.  (Tr. 47).

Plaintiff stated, "I try to move everyday and walk, get out in my yard, sun to help give me Vitamin D and help me try to get better."  Id.  He said that he did not feel capable of returning to his previous employment as a shipfitter or welder because he "can't pack none of the stuff" he would need to use to do those jobs.  (Tr. 48).

C.    <u>Vocational Expert Testimony</u>

A vocational expert, Mark Cheers, testified at the hearing that plaintiff's past work as a shipfitter was heavy labor with a Specific Vocational Preparation ("SVP") level of 8.[8] (Tr. 49).  The ALJ posed a hypothetical of a person with the same age, education and work experience as Norwood, who can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk about four (4) hours in an eight-hour day; and sit for up to six (6) hours in an eight-hour day.  <u>Id.</u>  Cheers testified that the hypothetical person could do a job in the sedentary range.  <u>Id.</u>  The vocational expert stated that the individual could perform jobs available in the state and national economies, such as a polisher or order clerk, which are an SVP level of 2.  <u>Id.</u>

The ALJ modified the hypothetical to include Norwood having "bad days" and missing or not completing four or five workdays per month.  <u>Id.</u>  Cheers testified that this limitation would not support competitive employment if the absences were habitual and ongoing in nature.  <u>Id.</u>  He stated that employers customarily allow one day of sick leave per month.  <u>Id.</u>

_____

[8] The DOT "lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."  SSR 00-4P, <u>Titles II & XVI:  Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Information in Disability Decisions</u>, 2000 WL 1898704, at *3 (Dec. 4, 2000).

> An SVP 2 job typically has a learning period of "[a]nything beyond short demonstration up to and including 1 month;" an SVP 4 job typically has a learning period of "[o]ver 3 months up to and including 6 months;" an SVP 5 job typically has a learning period of "[o]ver 6 months up to and including 1 year;" and an SVP 7 job typically has a learning period of "[o]ver 2 years up to and including 4 years."

<u>Bayer v. Colvin</u>, 557 F. App'x 280, 284 n.2 (5th Cir. 2014) (quoting U.S. Dep't of Labor, <u>Dictionary of Occupational Titles</u>, App. C. II (4th ed. 1991)).

The ALJ added a limitation that the hypothetical person takes medications that precluded his ability to concentrate to the extent that he could not follow simple one- or two-step instructions. (Tr. 50). Cheers testified that there would not be any work that this individual could perform. Id. Plaintiff's attorney did not ask any questions of the vocational expert. Id.

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 19-22). Except for the single error noted below, I find the ALJ's summary substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.    Plaintiff's Appeal

1.    The ALJ's findings regarding Norwood's residual functional capacity are supported by substantial evidence.

2.    The ALJ followed proper legal standards in determining how much weight to accord the medical opinions.

Because plaintiff's arguments regarding his first assignment of error implicate his similar arguments regarding his second assignment, the court addresses them together.

Before deciding at step four of the sequential evaluation whether a claimant can return to his past relevant work, the ALJ must determine his residual functional capacity, which is the person's "ability to do physical and mental tasks on a sustained basis despite limitations from h[is] impairments. In determining the [residual functional capacity], the Commissioner must consider all of a claimant's impairments, including those that are not severe." Giles v. Astrue, 433 F. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(e), 404.1545).

Residual functional capacity "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence." Perez, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ is solely responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Taylor v. Astrue, 706 F.3d 600, 602-03 (5th Cir. 2012).

The ALJ found that Norwood has the residual functional capacity to perform the full range of sedentary work. (Tr. 18). He found that plaintiff had severe impairments consisting of obesity and degenerative disc disease of his cervical and lumbar spines and that plaintiff's subjective allegations were not fully consistent with the medical evidence of record. (Tr. 17, 21). At step four, the ALJ found that plaintiff cannot perform his past relevant work as a shipfitter. (Tr. 22). At the fifth step, the ALJ found that plaintiff can perform other available jobs that exist in significant numbers in the national economy. (Tr. 22).

In his first assignment of error, Norwood argues that the ALJ's residual functional capacity findings are not supported by substantial evidence. Record Doc. No. 16 at p. 2. For this argument, he relies primarily on his own testimony concerning his alleged limitations, a summary of the objective findings from the medical records and the Estimated Functional Limitation Form (the "form") completed by his treating physician, Dr. Jay Vega, on February 3, 2016. (Tr. 233).

Plaintiff relies upon his own testimony that he has "chronic back pain with radicular symptomology into both legs at a level of 7-8 on a 10 point scale on a daily basis," and that he "is required to and does take narcotic pain medication on a daily basis due to ongoing and

continuing pain." Record Doc. No. 16 at p.2. Norwood adds that he "was a productive member of society for 24 years . . . until the automobile accident of 2012," and that his hearing testimony "indicated . . . that [he] had become obese due to apparent inactivity" and that he has multiple back-related diagnoses, which were compounded by his "inability to get a good night's sleep and depression." Id. at pp. 4-5. He emphasizes that he "had an open recommendation of an epidural steroid injection and in fact a history of conservative medical care therapy via a medication regimen of narcotics since the [car] accident of 2012." Id. at p. 4; (Tr. 55-56, 202-230). Plaintiff also states that his testimony shows that he was unable to afford epidural steroid injections or surgery. Id. at p. 5.

Norwood outlines the objective findings from his medical records to support his argument that "substantial medical documented evidence shows" he is "unable to engage in any gainful activity." Record Doc. No. 16 at p. 2. He cites evidence of a negative straight leg test; cervical spondylosis with possible lumbar disc disease; cervical disc disease; lumbar radiculitis; acute neck pain; left leg weakness; chronic spondylosis at the L5 level with end plate spurring that did not abut the existing right or left L5 nerve roots; broad based protrusion with an annular tear at L4-5 without any high grade or focal mass effect at L3-4; and shallow, non-compressive disc protrusions and mild facet degenerative changes. Id. at p. 3.

The form upon which plaintiff heavily relies for his disability argument is dated February 3, 2016. (Tr. 233). Dr. Vega completed the form by circling, checking and filling in the blanks. He opined that, in an eight-hour work day, plaintiff could sit for four (4) hours, stand for one (1) hour with rest and walk for one (1) hour with rest; continuously lift 10

pounds, frequently lift up to 20 pounds, but never carry 10 pounds or more; occasionally bend, squat crawl, but never climb; frequently reach above shoulder level; never engage in activities involving unprotected heights; and occasionally be around moving machinery and drive automotive equipment.  Record Doc. No. 16 at pp. 3-4.  Plaintiff also notes that Dr. Vega opined that he could not perform his previous employment and would be unable to acquire gainful employment, and that Dr. Vega gave him a disability rating of 100% for his previous job and manual labor.  Id. at p. 4.  In her reply memorandum, defendant argues that Dr. Vega's form opinion is not entirely inconsistent with the ALJ's residual functional capacity finding because plaintiff's ability to lift up to 10 pounds continuously and 20 pounds frequently is consistent with the definition of light work.[9]  Record Doc. No. 19 at p. 5.

In his memorandum, Norwood summarizes non-examining physician Dr. Charles Lee's residual functional capacity findings from July 22, 2014 (Tr. 53-69).  He argues that great weight should be given to the treating physician as opposed to the reviewing physician, Dr. Lee.  Plaintiff notes that Dr. Lee found that he can occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; stand or walk for four (4) hours with normal breaks; sit for

---

[9]

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).  A person who can work at the light level necessarily can work at the less strenuous sedentary level.  See 20 C.F.R. § 416.967(b) (" If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors . . . .").

six (6) hours in an eight-hour workday; frequently balance; occasionally climb ramps or stairs, stoop, kneel, crouch and crawl; and never climb ladders, ropes or scaffolds.  Id.  Dr. Lee cited Norwood's back pain as the reason for those postural limitations.  (Tr. 66).

The ALJ gave little weight to Dr. Vega's opinions.  (Tr. 20).  Norwood argues in his first assignment of error that Dr. Vega's opinions are consistent with his medical treatment records and should have been afforded great weight, and that the ALJ put undue weight on the opinions of Dr. Lee.  Plaintiff's argument implicates his second assignment of error that the ALJ did not follow proper legal standards in determining how much weight to accord the opinions of his treating physician, which he contends should have been afforded controlling weight, as compared to Dr. Lee's opinions.

Dr. Lee reviewed the medical evidence and opined that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were only partially consistent with the objective evidence.  (Tr. 65).  Based on the entire record, Dr. Lee found that plaintiff has a severe impairment – disorders of the back that are both discogenic and degenerative – but that he is capable of performing sedentary work.  (Tr. 54, 56, 59).  Dr. Lee included certain postural limitations in his residual functional capacity findings that plaintiff could only occasionally climb ramps or stairs, stoop, kneel, crouch and crawl, and never climb ladders, ropes or scaffolds.  (Tr. 66).  The ALJ gave great weight to Dr. Lee's opinions and largely incorporated them into his residual functional capacity findings, except the ALJ

imposed no postural restrictions and found that plaintiff is capable of performing the full range of sedentary work.[10] (Tr. 18).

Before addressing the ALJ's findings regarding the weight he gave the opinions of Drs. Lee and Vega, the court finds that four of Norwood's arguments under his first assignment of error are unavailing. First, plaintiff argues that the ALJ failed to consider his testimony that he is "unable to engage in any gainful activity." Record Doc. No. 16 at p. 2. As discussed above, plaintiff testified that he is in pain daily, and that he cannot work or do the kinds of activities that he would like to do. Plaintiff's testimony is insufficient to establish disability because subjective complaints of pain or other symptoms must be corroborated by objective medical evidence. Quijas v. Astrue, 298 F. App'x 391, 393 (5th Cir. 2008) (citing Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001)); Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989). In addition, plaintiff's own testimony often contradicts his subjective complaints because he stated that he can comfortably lift up to 60 pounds and walk for one to one and one-half hour at a time. (Tr. 34, 39). Norwood affirmed at the hearing that his doctors told him to exercise every day, and he testified that he tries to do so by getting out in the yard, occasionally cleaning the house, playing with and feeding his dogs and walking. (Tr. 36, 47).

---

[10]

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). "SSR 83-10 elaborates on the definition of 'sedentary work' and explains that 'standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.'" Johnson v. Astrue, 291 F. App'x 548, 551 (5th Cir. 2008) (citing SSR 83-10, 1983 WL 31251 (1983)).

He testified that he is willing to attempt to ride a "trike" motorcycle despite the discomfort that he would experience from the vehicle's vibrations. (Tr. 44).

Second, plaintiff asserts that he "should not be penalized for lack of appropriate medical care due to his inability to pay for same." Record Doc. No. 16 at p. 5. Norwood testified that he could not afford physical therapy, disc-related surgery or epidural steroid injections. (Tr. 35, 38, 42). However, there is no evidence from any health care visit record that Norwood told any doctor that he could not afford the suggested treatments. The ALJ found that while Norwood alleges that he is in "extreme constant pain, he just has not received the type of medical treatment that one would expect for a completely disabled person, such as intensive physical therapy, numerous epidural steroid injections, nerve blocks, and surgeries." (Tr. 21).

The United States Court of Appeals for the Fifth Circuit has consistently upheld ALJ determinations like this one in which the ALJ properly considered the claimant's failure to take medication or follow a prescribed course of treatment, even though each plaintiff claimed that these failings were prompted by his indigence. See Cornett v. Astrue, 261 F. App'x 644, 649 n.3 (5th Cir. 2008) (affirming ALJ's findings and consideration of plaintiff's inability to pay for additional medications or treatment because the record did not indicate that plaintiff's alleged disabilities would have been alleviated by regular medical treatment); Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990) (ALJ properly relied on plaintiff's lack of treatment as an indication of nondisability because there was "no record evidence, besides [plaintiff's] testimony, that he would be disabled with or without regular medical treatment.");

Tamez v. Sullivan, 888 F.2d 334, 336 (5th Cir. 1989) (The record contained no evidence that plaintiff's diabetes was disabling due to an inability to pay for treatment because the record only showed that plaintiff was unable to pay for a single prescription in 1986); Harper, 887 F.2d at 97 ("[N]o physician on record has pronounced [plaintiff] disabled and his subjective symptomology has been found incredible.").  The Fifth Circuit held in each case that plaintiff's inability to pay was not relevant because the evidence did not establish that he would have been disabled with or without regular medical treatment.  Id.  In this case, Norwood failed to carry his burden to show that he is disabled, which renders irrelevant under Fifth Circuit precedent any inability to pay for treatment.

Third, as stated above, plaintiff cites his February 18, 2013, MRI diagnoses and physical examination findings, including Dr. Vega's May 30, 2013, office visit note, to support his argument that he is disabled.  Record Doc. No. 16 at p. 3.  However, plaintiff does not explain how these objective findings render him disabled.  The ALJ accepted that plaintiff has severe impairments of obesity and degenerative disc disease of his cervical and lumbar spines, but the mere diagnosis of and treatment for an impairment do not establish a claimant's disability claims.  Bordelon v. Astrue, 281 F. App'x 418, 422 (5th Cir. 2008) (citing Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983)); McLendon v. Barnhart, 184 F. App'x 430, 431 (5th Cir. 2006); Harris v. Barnhart, 65 F. App'x 129, 132 (9th Cir. 2003); Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991); Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 87-88 (1st Cir. 1991).

Fourth, plaintiff's argument that his combined obesity and degenerative disc disease rise to the level of a listed impairment is not substantially supported by the medical evidence. Whether an impairment or combination of impairments meets a listing is a medical question that can be answered only by medical evidence.  20 C.F.R. §§ 404.1526(b), 416.926(b); McCuller v. Barnhart, 72 F. App'x 155, 158 (5th Cir. 2003); Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990); McKnight v. Astrue, No. 07-1654, 2008 WL 4387114, at *3 (W.D. La. Aug 15, 2008), report & recommendation adopted, 2008 WL 5746939 (W.D. La. Sept. 23, 2008), aff'd, 340 F. App'x 176 (5th Cir. 2009).  "The specified medical criteria [of a listing] are designed to be demanding and stringent because they lead to a presumption of disability[,] making further inquiry unnecessary." Anderson v. Astrue, No. 3:11-CV-0051-K-BH, 2011 WL 3331821, at *6 (N.D. Tex. July 11, 2011), report & recommendation adopted, 2011 WL 3347857 (N.D. Tex. July 29, 2011) (citing Sullivan v. Zebley, 493 U.S. 521, 532 (1990); Falco, 27 F.3d at 162).  "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Zebley, 493 U.S. at 531 (citing 20 C.F.R. § 416.926(a); SSR 83-19, at 91) (emphasis in original).  Norwood does not identify any listing or cite to any specific evidence that he meets or medically equals a listed impairment.

As to plaintiff's arguments regarding weight the ALJ gave to the opinions of his treating physician, Dr. Vega, and the reviewing physician, Dr. Lee, the court finds that the ALJ applied the appropriate legal standards and that substantial evidence supports his

decision.  The ALJ afforded great weight to Dr. Lee's opinions because he found them to be

supported by the medical evidence.  The ALJ gave Dr. Vega's opinions little weight because

he found them to be inconsistent with plaintiff's treatment notes and based largely on

plaintiff's subjective complaints, which he found were not fully consistent with the medical

evidence of record.

> It is well established that
>
> [t]he opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is <u>not inconsistent with</u> . . . <u>other substantial evidence</u>.  The opinion of a specialist generally is accorded greater weight than that of a non-specialist.
>
> Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status.  <u>[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.</u>  <u>The treating physician's opinions are not conclusive.</u>  <u>The opinions may be assigned little or no weight when good  cause is shown.</u>  Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

<u>Newton</u>, 209 F.3d at 455-56 (quotations and citations omitted) (ellipsis and brackets in

original) (emphasis added).

The ALJ's decision demonstrates that he carefully considered and weighed all the

evidence.  Dr. Lee reviewed the entire medical record as of July 22, 2014.  In assessing

plaintiff's residual functional capacity, the ALJ afforded great weight to Dr. Lee's opinions

from July 22, 2014, and little weight to Dr. Vega's opinions from February 3, 2016.  (Tr. 20-

21).  Relying on Dr. Lee's opinion, the ALJ found that Dr. Vega's opinion was inconsistent with the record as a whole, and that Norwood is not 100% disabled as indicated by Dr. Vega. The ALJ's stated reasons for affording Dr. Lee's opinion great weight were that his opinions were consistent with the objective findings in the record of symptomatic cervical and lumbar disc disease, which were treated conservatively with medication; and no healthcare provider who examined plaintiff, including Dr. Vega, had reported that he was unable to work.  (Tr. 21).  In addition, the ALJ noted "significant medication treatment gaps" in Norwood's treatment history, a lack of treatment of the kind a "completely disabled person" would receive – such as intensive physical therapy, numerous epidural steroid injections, nerve blocks and surgeries – and no general indices of a person who suffers from chronic pain – such as atrophy, impairment of general nutrition, signs of premature aging and poor general health.  Id.  The ALJ also found that while Norwood alleges that he is depressed, there are no records from a mental health care provider suggesting that he was diagnosed with or treated for depression.  Id.  The ALJ's reasons are substantially supported by the evidence.

First, it is well established that a physician's statement that a patient is disabled does not mean that the patient is disabled for purposes of the Act, because that is a determination that may be made only by the Commissioner.  Miller v. Barnhart, 211 F. App'x 303, 305 (5th Cir. 2006) (citing Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003)); Chambliss, 269 F.3d at 522; Tamez, 888 F.2d at 336 n.1.

Second, in making these findings, the ALJ considered the evidence filed in the record both before and after Dr. Lee's disability determination explanation, including Dr. Vega's

form opinion.  As Dr. Lee's review of the physical medical evidence of record shows, Dr. Vega noted on November 26, 2012, six days after plaintiff's car accident and alleged onset date, that plaintiff had an abnormal range of motion with tenderness, a headache, a cervical spine sprain and a lumbar spine sprain.  (Tr. 55).  Plaintiff continued to complain of back pain and weakness through his last appointment with Dr. Vega on May 30, 2014, and Dr. Vega diagnosed him with lumbar radiculopathy, acute neck pain, left leg weakness and lumbar pain.  (Tr. 55-56).  Dr. Vega's checklist opinion does not include any objective findings – such as plaintiff's three positive straight leg tests from January 21, February 8 and June 17, 2013 (Tr. 215, 217, 218) – to support his assessment of plaintiff's limitations.  (Tr. 233).  Dr. Vega even released plaintiff to work on October 8, 2013.  (Tr. 213).  Plaintiff's office treatment records do not show that Dr. Vega placed any restrictions on how long plaintiff could sit, stand or walk.

The ALJ adequately explained why he gave little weight to Dr. Vega's opinion as outlined in the  form.  The ALJ noted that Dr. Vega's assessment was not consistent with the record, which shows that plaintiff received treatment for chronic back and shoulder pain, including physical examinations and oral medication, and that there is no evidence to indicate that plaintiff's condition worsened or that he continued to receive treatment after he filed his applications for benefits on May 23, 2014 and had his last appointment with Dr. Vega on  May 30, 2014.  (Tr. 20-21).  Thus, Dr. Vega's checklist form opinions on February 3, 2016 are not based on any current examination or treatment records.  (Tr. 233).

Dr. Brett E. Casey, the physician who handled plaintiff's care at Houma Orthopedic Clinic, noted on February 7, 2013, that plaintiff had a normal neurologic exam of both lower extremities with excellent ankle strength, a negative straight leg test, mild cervical spondylosis and lumbar spondylolisthesis at L5-S1. (Tr. 207). Dr. Casey found on February 21, 2013 that Norwood continued to have good strength in both lower extremities with no gross motor deficits. (Tr. 202). On that same day, Dr. Casey noted that plaintiff's "biggest problem is his back" and recommended lumbar epidural steroids. Id. During the ALJ hearing, however, plaintiff testified that he could not afford an epidural steroid injection and did not get one for that reason. (Tr. 42). In his summary of Dr. Vega's treatment records, the ALJ states that plaintiff "received epidural steroid injections to improve his symptoms but reported minimum improvement." (Tr. 21) (emphasis added). In the next paragraph, which is the summary of the assessment by reviewing physician, Dr. Lee, the ALJ states that "the record shows one steroid injection shot recommendation and a history of conservative treatment with medication." Id. These statements are apparently erroneous. I can find no notation in the medical records that plaintiff ever actually received an epidural injection, and the ALJ's opinion does not specifically cite any such medical record establishing actual administration of any such injection. Plaintiff's records from office visits with Dr. Vega do not indicate that he received injections or that plaintiff and Dr. Vega ever discussed epidural steroid injections, despite Dr. Casey's recommendation. Coupled with the nature of the checklist form, the absence of any indication in the record that Dr. Vega followed up with plaintiff concerning

Dr. Casey's recommendation further supports the ALJ's assignment of little weight to Dr. Vega's assessment, despite his misconception about an epidural injection.

The only mention of epidural steroid injections in plaintiff's medical records is the February 21, 2013 note from Dr. Casey recommending injections. (Tr. 202). Dr. Casey notes that plaintiff will follow-up with him after receiving the lumbar epidural steroids, id., but there are no follow-up notes from Dr. Casey, or any other physician, assessing the effectiveness of any epidural steroid injection. The ALJ erred in stating that plaintiff received an epidural steroid injection, but this error makes no difference to his ultimate finding, which is supported by substantial evidence. See Audler, 501 F.3d at 448 (Having found that the ALJ erred, the Fifth Circuit stated that "we must still determine whether this error was harmless. Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected.").

Dr. Casey also referred Norwood to Dr. Maulsby for an MRI of Norwood's cervical and lumbar spines. Id. Dr. Maulsby concluded on February 18, 2013 that the MRI revealed: 1) "Chronic spondylolysis at L5. Endplate spurring at this level results in at least moderate bilateral neural foraminal stenosis. This does not abut the existing right and left L5 nerve root."; (2) "Broad-based protrusion with annular tear at L4-5 without high-grade or focal mass effect."; and (3) "Shallow bulging at L3-4." (Tr. 228). On May 30, 2013, Dr. Michael S. Haydel, a pain management physician, noted that plaintiff's ambulation was normal, but that Norwood would "undergo lumbar epidural steroid injection series." (Tr. 225).

The ALJ had good cause to discount Dr. Vega's February 3, 2016 opinion based on the medical treatment records discussed above and because of its checklist format.  Appellate courts, including the Fifth Circuit, have often held that checklist opinions are unworthy of credence when they are not adequately supported by or are inconsistent with the medical records.  See Foster v. Astrue, 410 F. App'x 831, 833 (5th Cir. 2011) ("[T]he 'questionnaire' format typifies 'brief or conclusory' testimony. . . . [W]e agree with the magistrate judge's conclusion that 'due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations, [the treating physician's] opinion is given little weight.'"); Peck v. Barnhart, 214 F. App'x 730, 738 (10th Cir. 2006) (The ALJ provided legitimate reasons for rejecting a doctor's opinion consisting "of checked boxes and circled numbers on a form" when the "opinion was not supported with additional explanation" nor justified by the doctor's treatment notes.); Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) ("the checklist format, generality, and incompleteness of the assessments limit their evidentiary value"); Johnson v. Apfel, 189 F.3d 561, 564 (7th Cir. 1999) (upholding ALJ's rejection of physician's check-box form when it was contradicted by evidence in the record); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (quotation omitted) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best . . . [When] these so-called reports are unaccompanied by thorough written reports, their reliability is suspect . . . ."); Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987) ("Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence."); cf. Larson v. Astrue, 615 F.3d 744, 751 (7th Cir.

2010) (citing Johnson, 189 F.3d at 564; Mason, 994 F.2d at 1065) ("Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records. . . . Here, there is a long record of treatment by [the treating physician] that supports his notations on the form.").

"It is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" Fontenot v. Colvin, 661 F. App'x 274, 277 (5th Cir. 2016) (quoting Taylor, 706 F.3d at 603) (brackets in original). "The ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'" Ramirez, 606 F. App'x at 779 (quoting Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985)); accord Yates v. Colvin, 606 F. App'x 225, 229 (5th Cir. 2015) (citing Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994)). "In declining to give controlling weight to Dr. [Vega's] questionnaire responses, the ALJ performed his role of weighing conflicting evidence and resolving the conflict, and we perform our limited role of ensuring that this decision is supported by substantial evidence, which it is." Heck v. Colvin, 674 F. App'x 411, 415 (5th Cir. 2017) (citing Greenspan, 38 F.3d at 237). When the ALJ has relied on reports from examining and reviewing physicians and adequately dealt with any dispute between them, his residual functional capacity determination "must be upheld under the substantial evidence standard, because reliance on the analysis of these doctors is more than a mere scintilla, and any evaluation of the accuracy of the analysis is beyond the scope of this court's review." Fontenot, 661 F. App'x at 277 (citing Taylor, 706 F.3d at 603; Perez, 415 F.3d at 461; Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990)).

As he is required to do, the ALJ considered all of Norwood's symptoms, including pain, and the extent to which the symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence in Norwood's records. Luckey, 458 F. App'x at 326 (citing Scott, 770 F.2d at 485); Perez, 415 F.3d at 462. The ALJ is bound to explain his reasons for rejecting a claimant's subjective complaints, but "is not required to 'follow formalistic rules in his articulation.'" Hernandez v. Astrue, 278 F. App'x 333, 339 (5th Cir. 2008) (quoting Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994)). Even under the revised standards of SR16-3P, which applied to the ALJ's decision and merely clarified existing regulations, the ALJ's task remains the same. See Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (The point of the new guidance is to "clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence."); Levyash v. Colvin, No. 16-2189, 2018 WL 1559769, at *7-8 (D.N.J. Mar. 30, 2018) ("[W]hile SSR 16–3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same."); accord Mayberry v. Colvin, No. G–15–330, 2016 WL 7686850, at *5 (S.D. Tex. Nov. 28, 2016) (citing Lockwood v. Colvin, No. 15 C 192, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016); Burnstad v. Colvin, Case No. 6:15–cv–00921–SI, 2016 WL 4134535, at [*]11 n.9 (D. Or. Aug. 2, 2016); Dooley v. Comm'r of Soc. Sec., No. 16–5146, 2016 WL 4046777, at *5 n.1 (6th Cir. 2016)).

The ALJ has the responsibility to evaluate the credibility of the witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164), and the consistency between the witness's testimony and the other evidence in the record. Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court. McKnight v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009) (citing Newton, 209 F.3d at 459); Bedford v. Astrue, 236 F. App'x 957, 962 (5th Cir. 2007) (citing Newton, 209 F.3d at 459). The ALJ's explanation of his reasons for finding plaintiff not entirely credible or that plaintiff's testimony is inconsistent with the evidence as a whole is all that is required. Undheim v. Barnhart, 214 F. App'x 448, 450-51 (5th Cir. 2007) (citing 20 C.F.R. § 404.1529(c); Falco, 27 F.3d at 164); James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163); Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999). The ALJ complied with these standards in the instant matter.

The ALJ need not address each aspect of the record in detail. "[T]here will always be some evidence that is not specifically discussed in the Commissioner's decision. Our review is limited to examining whether the decision to deny benefits is supported by substantial evidence in the record, and it is here. Likewise, the Commissioner used the proper legal standards to evaluate the evidence, and the ALJ adequately resolved inconsistencies in the record." Giles, 433 F. App'x at 251. Accordingly, plaintiff's two assignments of error lack merit.

<u>CONCLUSION</u>

The ALJ used the appropriate legal standards to weigh and resolve conflicts in the medical opinion evidence. His residual functional capacity findings and determination that Norwood can perform sedentary work are supported by substantial evidence.

**<u>RECOMMENDATION</u>**

Accordingly, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[11]

New Orleans, Louisiana, this ___23rd___ day of May, 2018.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

_____

[11]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.